165 N.J. Super. 567 (1979)
398 A.2d 925
MARGARET DONCH, ADMINISTRATRIX OF THE ESTATE OF KENNETH DONCH, AND MARGARET DONCH, INDIVIDUALLY, PLAINTIFF,
v.
DELTA INSPECTION SERVICES, INC., EXXON, POSEIDON COMPANY, AND U.S. DIVING CO., A/K/A U.S. DIVERS COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 19, 1979.
*568 Mr. Bertram E. Busch for plaintiff (Busch and Busch, attorneys).
*569 Mr. Michael B. Oropollo for defendant Delta Inspection Services, Inc. (Messrs. Hoagland, Longo, Oropollo & Moran, attorneys).
Mr. John J. Carlin, Jr. for defendant Exxon (Messrs. Farrell, Curtis, Carlin, Davidson & Mahr, attorneys).
Mr. Harry S. Evans for defendant Poseidon Company (Messrs. Evans, Koelzer, Marriott & Osborne, attorneys).
Mr. Jeffery M. Kadish for defendant U.S. Diving Co., a/k/a U.S. Divers Company (Messrs. Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys).
DREIER, J.S.C.
Defendant Exxon Corporation (Exxon) has moved for summary judgment in this wrongful death action brought by plaintiff Margaret Donch. This court reserved decision after receipt of supplemental briefs and argument. Although the central issue here is one of first impression in this State, there is no issue of material fact. Summary judgment may therefore be granted in favor of defendant Exxon. R. 4:46-2. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954).
Plaintiff's decedent, Kenneth Donch (Donch), was employed by Delta Inspection Services, Inc. (Delta), which was in the business of providing various inspection services. Exxon hired Delta as an independent contractor to inspect salt water suction lines, including underwater pipes at an Exxon salt water pumping station. Though Delta received from Exxon general safety instructions routinely issued to independent contractors, Exxon provided no specific instructions regarding diving operations. Employees of Exxon monitored the status of Delta's work at the pumping station, but only to gather the data Delta was hired to provide.
On December 18, 1976, Donch was working underwater at the Exxon pumping station, wearing diving gear, including a dry suit with breathing apparatus, weight belts, rubbers *570 and a face mask. He was assisting and under the supervision of Andrew Duran, president of Delta. While working with Duran, Donch drowned.
Plaintiff Margaret Donch brought suit, both individually and as administratrix of her son's estate, against Exxon, Delta and manufacturers of the diving equipment. Plaintiff originally claimed that Exxon (1) negligently failed to provide Donch with a reasonably safe place to work, (2) retained control over the diving operations and negligently failed to adequately supervise Donch, and (3) negligently engaged an independent contractor who failed to adequately supervise the inspection work. Plaintiff also asserted the vicarious liability of Exxon for the negligence of Delta, its independent contractor, in carrying out an inherently dangerous activity.
Plaintiff adduced no evidence beyond the bare allegations of the pleadings regarding the first three of its arguments, and plaintiff did not urge these grounds upon the court at oral argument. Primary liability requires that defendant be found negligent in its own actions or nonactions. Trecartin v. Mahony-Troast Const. Co., 18 N.J. Super. 380, 389 (App. Div. 1952); Reiter v. Max Marx Color & Chemical Co., 35 N.J. 37 (1961). In the present case Exxon engaged a competent contractor, provided plaintiff with a reasonably safe working place and retained no control over Delta's diving activities; there thus have been established no grounds upon which primary liability may be based. See Rodrigues v. Elizabethtown Gas Co., 104 N.J. Super. 436, 442 (App. Div. 1969).
The general rule governing vicarious liability for the negligence of an independent contractor is that of nonliability:
* * * [O]rdinarily where a person engages a contractor, who conducts an independent business by means of his own employees * * *, he is not liable for the negligent acts of the contractor in the performance of the contract [citing cases] * * *. [Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425, 430-431 (1959)] *571 There is an exception to the rule when the work is inherently dangerous. An inherently dangerous activity is one
* * * which can be carried on safely only by the exercise of special skill and care, and which involves grave risk of danger to persons or property if negligently done. * * * The term signifies that danger inheres in the activity itself at all times, so as to require special precautions to be taken with regard to it to avoid injury. * * * [T]he term imports a danger which is incidental to and characteristic of the work itself, and not one which arises solely from the means and methods of its performance * * *. [Id. at 435]
In Majestic Realty the court established the exception to the nonliability rule, holding that when the activity is inherently dangerous, "the duty owed [by the landowner] is nondelegable. That is, the duty is absolute, not the liability, and it cannot be put aside and immunity gained through the agency of an independent contract." Id. at 438.
When the Supreme Court established the inherent danger exception to nonliability in Majestic Realty, it did so in the context of a suit by adjoining landowners against an owner whose contractor's negligence resulted in damage to adjacent property. The court described the razing operation in question as being "inherently dangerous because its very nature involves a peculiar and high risk of harm to members of the public or adjoining proprietors of the land unless special precautions are taken * * *." Id. at 436. (Emphasis added). The landowner will therefore not be permitted to escape liability for injuries to third parties arising out of inherently dangerous work. Araujo v. N.J. Natural Gas Co., 62 N.J. Super. 88 (App. Div. 1960), certif. den. 33 N.J. 328 (1960). No mention is made in Majestic Realty of dangers to employees of the contractor working on the site.
Is an employee of an independent contractor included within the category of "members of the public," "third parties" or "others" (cf. Restatement, Torts 2d, §§ 413, 416, 427) for purposes of the inherent danger exception? The inherent danger doctrine has never been extended to employees of a contractor engaged in inherently dangerous work. In *572 Rodrigues v. Elizabethtown Gas Co., supra, 104 N.J. Super. at 444-445, the court acknowledged this issue but declined to decide it, since the facts of the case were inappropriate. There, the independent contractor was engaged "in an activity that presented peculiar intrinsic hazards, so that the activity could rationally be denoted `inherently dangerous'." Id at 445. However, the employee's injuries did not result from those dangers inherent in the activity. Cf. Reiseman v. Public Service Corp., 82 N.J.L. 464 (E. & A. 1911); Gibilterra v. Rosemawr Homes, 19 N.J. 166 (1955).
Here, Donch drowned while working underwater for a prolonged period of time. Such an activity requires not only special skills and precautions but also necessitates the use of breathing apparatus. The court takes judicial notice that the activity is undoubtedly in itself dangerous to the diver. Evid. R. 9(1). It was this very aspect of work in which Donch was engaged when he drowned. We are thus carried beyond Rodrigues. However, it remains to be determined whether such a danger is one which carries with it a nondelegable duty on the part of Exxon.
Rodrigues, supra, 104 N.J. Super. at 443, notes the jurisdictional dichotomy that has arisen over the issue. Several jurisdictions have recognized inherent danger in activities which involve the necessary creation of grave risk to either the public in general or employees of contractors in particular, and landowner liability for employee injuries has been found. See, e.g., Woolen v. Aerojet General Corp., 57 Cal.2d 407, 20 Cal. Rptr. 12, 369 P.2d 708 (Sup. Ct. 1962). Other states refuse to apply the concept of inherent danger to employees of independent contractors. See, e.g., Humble Oil & Refining Co. v. Bell, 180 S.W.2d 970 (Tex. Civ. App. 1943), error refused, 142 Tex. 645, 181 S.W.2d 569 (Sup. Ct. 1949); Wellman v. East Ohio Gas Co., 160 Ohio St. 103, 113 N.E.2d 629 (Sup. Ct. 1953). In Humble, supra at 975, the court concluded that an employee of an independent contractor is not a third person within the meaning of the *573 inherent danger exception. Wellman, supra, states the rule that
Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury attaches to the one who engaged the services of the independent contractor. [113 N.E.2d at 632]
See also, Hammond v. City of El Dorado Springs, 362 Mo. 530, 242 S.W.2d 479 (Sup. Ct. 1951); Kowalsky v. Conreco Co., Inc., 264 N.Y. 125, 190 N.E. 206 (Ct. App. 1934); Cagle v. McQueen, 200 F.2d 186 (5 Cir.1956); Young's Adm's v. Farmers & Depositors Bank, 267 Ky. 845, 103 S.W.2d 667 (Ct. App. 1937); Evans v. Whirlpool Corp., 10 Ohio St.2d 240, 227 N.E.2d 208, 209 (Sup. Ct. 1967); Epperly v. City of Seattle, 65 Wash.2d 777, 399 P.2d 591, 594-596 (Sup. Ct. 1965); Welker v. Kennecott Copper Co., 1 Ariz. App. 395, 403 P.2d 330, 335-339 (Ct. App. 1965); Eutsler v. U.S., 376 F.2d 634, 635-636 (10 Cir.1967); Lancaster v. Lancaster, 213 Miss. 536, 57 So.2d 302, 305 (Sup. Ct. 1952) (dictum); O'Leary v. James & Wunderlich, 192 F. Supp. 462, 473-475 (D. Mont. 1960), aff'd, p.c. 288 F.2d 462 (9th Cir.1961).
While the New Jersey courts have specifically applied the inherent danger doctrine to injured third parties, there remains the settled line of cases refusing to apply vicarious liability where an employee of an independent contractor is injured by reason of the dangers inherent in the work for which the contractor was hired. In Trecartin, supra, Judge (now Mr. Justice) Brennan stated:
A general contractor who sublets work, relinquishing the right of control and direction over the manner in which the work shall be done, and the employees engaged in doing it, and exercising only such superintendence as is necessary to see that the subcontractor performs the contract, ordinarily has no duty to protect an employee of the subcontractor from the very hazards that arise from the doing of the contract work itself; the subcontractor and not the general *574 contractor has the duty to guard his employees against such dangers * * *. [18 N.J. Super. at 386; emphasis added]
The activity involved in Trecartin was work on the 150-foot level of an open-work structure steel television tower. The case, decided before Majestic Realty introduced the concept of inherent danger, does not use such terminology. In Wolczak v. National Electric Prod. Corp., 66 N.J. Super. 64 (App. Div. 1961), the court, also without discussing the inherent danger rule, contended:
The landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly. Thus the unimpaired line of holdings to the effect that the duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform. [at 75; emphasis added]
Another factor supports the inapplicability here of the inherent danger exception. Employees of the contractor have available the worker's compensation system. If the inherent danger exception were applied here, an injured employee could receive a compensation award and still have a right of action for that same independent contractor's negligence based on vicarious liability of the party who engaged the contractor. The Legislature, by creating the workers' compensation system, assured the employee's remedy. In turn, the employee must recognize the expectations of the party who engages his or her employer. Explaining this reasoning, the court in Eutsler, supra at 636, drew from a comment (not finally adopted) to Tentative Draft No. 7 of the Restatement, Torts 2d, chapter 15:
The workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While the workmen's compensation acts not infrequently provide for third party liability, it has *575 not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.
Therefore, a strong policy argument in Exxon's favor is that the application of the inherent danger doctrine to employees of independent contractors would subvert the intended operation of the workers' compensation system.
There are three possible situations in which an employee of an independent contractor could be injured while involved in a dangerous activity: first, the employee could be injured in an incident unrelated to the inherent danger (this was the circumstance involved in Rodrigues); second, the activity could be dangerous both to employees and the general public; third, the activity itself could be dangerous only to the employee, and not to the general public (as in our case).
Though an activity may properly be labelled "inherently dangerous" under the doctrine when it involves a grave risk both to the persons or property of third parties and to the contractor's employees, injury to the employee should not result in the vicarious liability of the contractor's principal. The duty owed is the same: The landowner will be vicariously liable only to members of the public or adjoining property owners. See Majestic Realty, supra, 30 N.J. at 436. This court therefore determines that when a party engages an independent contractor to carry on an activity which by its very nature involves a peculiar or high risk of harm to the contractor's employees, the activity is not inherently dangerous as to such parties within the Majestic Realty nondelegability exception, whether the employee alone or with others is placed in danger.
Exxon is neither principally nor vicariously liable for the death of plaintiff's decedent. Summary judgment is granted in favor of defendant Exxon Corporation, dismissing plaintiff's complaint against it.